## STATE OF CONNECTICUT *v.* CHAUNCEY WATTS
## (AC 21966)

Foti, Schaller and Flynn, Js.

Argued January 10—officially released July 9, 2002

*Avery S. Chapman*, for the appellant (defendant).

*Lisa A. Riggione*, senior assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *John F. Fahey*, assistant state's attorney, for the appellee (state).

*Opinion*

FLYNN, J. The defendant, Chauncey Watts, appeals from the judgment of conviction, rendered after a jury trial, of manslaughter in the first degree with a firearm in violation of General Statutes §§ 53a-55a (a) and 53a-8 (a), and three counts of assault in the first degree in violation of General Statutes § 53a-59 (a) (5) and 53a-8 (a). On appeal, the defendant claims (1) that there was insufficient evidence to support each of his convictions, (2) that the trial court improperly denied his motion for a judgment of acquittal after the state's case-in-chief, (3) that the jury's verdict was legally inconsistent, (4) that the trial court improperly admitted evidence of uncharged misconduct by the defendant and (5) that the court improperly admitted certain out-of-court statements made by the defendant. We affirm the judgment of the trial court.

The jury reasonably could have found the following relevant facts. At the time of the incident giving rise to the conviction at issue in this appeal, the defendant was a member of the "20 Love" street gang, along with

Charlie Ray Logan. At that time, there was strife between the Love organization and the "Latin Kings," a competing street gang. In the defendant's words: "Back then, it was like a war on the streets. The Latin Kings shot at us and we shot back."

In the evening of September 29, 1995, the defendant and Logan were riding bicycles on the streets of Hartford. At approximately 8 p.m., they rode past four young women at the corner of Alden and Dean Streets, where one of the women, Darlene Cardona, resided. At the time, the women had known the defendant for roughly two years through the local school system.

Shortly thereafter, Cardona's boyfriend, who was apparently not involved in any way in the crime or in the defendant's subsequent trial, arrived and the three other women, Arlene Reyes, Madeline Rodriguez and Jessica Rodriguez,[1] left the residence to visit a local grocery store on Franklin Avenue. After visiting the grocery store, the women walked to a friend's house, at 53-55 Franklin Avenue.

At roughly 8:30 p.m., the three women were sitting on a blue Cadillac parked in the driveway at the residence, facing the street. Four young men, Javier Mateo, Carlos Santiago, Jose Roldan and Jose Ortiz, were standing around the car. Jessica Rodriguez heard some noise and stood up, observing the street. As the defendant and Logan rode their bicycles past the residence on Franklin Avenue, each brandished a handgun and each fired four rounds at the group gathered by the car.[2] Carlos Santiago felt a bullet graze his neck. He ducked to avoid further gunfire and crawled away. Jose Ortiz was shot through the left thigh. Jose Roldan caught a

---

[1] At trial, Jessica Rodriguez used her married name, Jessica Lebron.

[2] Four casings from a .380 caliber weapon and four casings from a nine millimeter weapon were recovered. The witnesses testified that each defendant carried only one weapon and that each fired on them.

round in the left knee, where it lodged. He managed to stagger away, onto Maple Avenue, where he entered a building and called an ambulance. Javier Mateo's flank was turned to the street during the shooting. One bullet passed through his left thigh. Another bullet entered his right flank, passed through his abdomen and chest, and exited from his left armpit. The defendant and Logan fled the scene on their bicycles.

Meanwhile, Cardona and her boyfriend heard the shots from her porch on Dean Street, followed by screams. In a matter of seconds, she observed the defendant and Logan fleeing from the scene on Dean Street, "cuffing something" in their sweatshirts. Cardona heard someone scream "Javi," the name of her friend. To avoid danger, she waited until the defendant and Logan passed by before rushing to the scene on Franklin Avenue.

Javier Mateo was rushed to Hartford Hospital. The bullet had perforated his heart, leading to cardiac arrest. Although briefly resuscitated, he died after roughly one hour in the operating room.

After seeing his own picture in the news the following day, the defendant fled to Florida. Approximately three years later, the defendant returned to Hartford and surrendered himself to the police on an outstanding warrant. He gave a statement to the police implicating himself as one of the shooters. The state then brought the charges leading to the convictions at issue in this appeal. Further facts will be set forth where necessary.

We first turn to the defendant's claim that there was insufficient evidence to support his conviction for manslaughter in the first degree with a firearm and assault in the first degree. We conclude that the evidence was sufficient.

We review the following points of law because such an insufficiency claim is grounded in principles of due

process. The due process clause of the fourteenth amendment to the United States constitution protects a criminal defendant from conviction absent proof beyond a reasonable doubt of each fact necessary to constitute the elements of the crime. *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). Because a "jury may occasionally convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt," a defendant is entitled to challenge his conviction on that basis with a motion for a judgment of acquittal. *Jackson* v. *Virginia*, 443 U.S. 307, 317, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).

"The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the [evidence] so construed . . . the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Senquiz*, 68 Conn. App. 571, 575–76, 793 A.2d 1095, cert. denied, 260 Conn. 923, 797 A.2d 519 (2002).

"[T]he inquiry into whether the record evidence would support a finding of guilt beyond a reasonable doubt does not require a court to ask itself whether it believes that the evidence . . . established guilt beyond a reasonable doubt. . . . Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. . . .

"It bears emphasis that [i]n evaluating evidence that could yield contrary inferences, the [jury] is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . As

we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [jury], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." (Citations omitted; internal quotation marks omitted.) *State* v. *Best*, 56 Conn. App. 742, 752–53, 745 A.2d 223, cert. denied, 253 Conn. 902, 753 A.2d 937 (2000).

In his specific claim, the defendant argues that the eyewitness identifications of him were of questionable reliability because the witnesses had a motive to lie about the defendant's involvement and had an opportunity to collude before giving statements implicating him. The defendant suggests that "when viewed in a critical light," the evidence is insufficient.

This argument suggests a standard of review in diametric opposition to the one we are bound to employ. We must view the evidence in the light most favorable to sustaining the verdict, not "a critical light." Although there was a brief opportunity for the witnesses to converse prior to their statements to the police, we are in no position to infer that they fabricated their identifications and later testimony. "It is . . . the absolute right and responsibility of the jury to weigh conflicting evidence and to determine the credibility of the witnesses. . . . Thus, the issue of the identification of the defendant as the perpetrator of the crime is peculiarly an issue of fact to be resolved by the jury." *State* v. *Jefferson*, 67 Conn. App. 249, 256, 786 A.2d 1189 (2001), cert. denied, 259 Conn. 918, 791 A.2d 566 (2002). Several eyewitnesses, and the defendant's own statement, iden-

tified the defendant as one of the shooters. The jury was entitled to believe that evidence and find the defendant guilty beyond any reasonable doubt.

We turn now to the defendant's claim that the trial court improperly denied his motion for a judgment of acquittal. Pursuant to the "waiver rule," discussed in *State* v. *Calonico,* 256 Conn. 135, 138, 770 A.2d 454 (2001), we decline to review this claim. "The waiver rule prohibits appellate review of the sufficiency of the state's prima facie case if the defendant presents evidence after the motion is denied. See *State* v. *Booker,* 28 Conn. App. 34, 41–42, 611 A.2d 878, cert. denied, 223 Conn. 919, 614 A.2d 826 (1992), cert. denied, 507 U.S. 916, 113 S. Ct. 1271, 122 L. Ed. 2d 666 (1993). Thus, when the state does not concede that it failed to establish a prima facie case and the defendant presented evidence, we must rely on the trial court's determination. See id." *State* v. *Zoravali,* 34 Conn. App. 428, 442, 641 A.2d 796, cert. denied, 230 Conn. 906, 644 A.2d 921 (1994).

The defendant moved for a judgment of acquittal after the state closed its case-in-chief. The court denied this motion. By setting forth evidence of his own, the defendant waived the right to challenge the court's judgment as to the sufficiency of the evidence at that point. The only proper challenge to the sufficiency of evidence at that point is addressed to the entirety of the evidence, including evidence that the defendant has set forth. *State* v. *Gilbert,* 52 Conn. App. 531, 532–33 n.2, 727 A.2d 747, cert. denied, 249 Conn. 905, 733 A.2d 224 (1999). We dealt with that claim earlier.

Next, the defendant claims that the jury's verdict is legally inconsistent. The defendant did not raise this claim at trial. Therefore, it is unpreserved. He has not briefed any argument as to why we should entertain review under the plain error doctrine or under *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989). Accord-

ingly, we decline to review this claim. Cf. *State* v. *Rogers*, 38 Conn. App. 777, 787–88, 664 A.2d 291, cert. denied, 235 Conn. 918, 665 A.2d 610 (1995), cert. denied, 516 U.S. 1084, 116 S. Ct. 799, 133 L. Ed. 2d 747 (1996).

We next turn to the defendant's claim that the court improperly admitted evidence of uncharged misconduct in the form of a false identification card belonging to the defendant and testimony concerning his gang affiliation.

As a threshold matter, we set forth our standard of review. "It is well settled that [t]he trial court's ruling on the admissibility of evidence is entitled to great deference. . . . [T]he trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . [Its] ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling . . . . Moreover, evidentiary rulings will be overturned on appeal only where there was . . . a showing by the defendant of substantial prejudice or injustice." (Citations omitted; internal quotation marks omitted.) *Gaudio* v. *Griffin Health Services Corp.*, 249 Conn. 523, 546–47, 733 A.2d 197 (1999).

First, we consider the court's admission of the false identification card. The defendant argues that the court improperly admitted evidence that he fled the state after the alleged crime and used a false identification card bearing a different name to evade the criminal justice system. Specifically, the defendant contends that the evidence of evasive conduct related to another incident and was thus irrelevant to his consciousness of guilt for the crimes charged.

Next, we consider the rules of evidence pertinent to this claim. In our courts, "[e]vidence that is not relevant is inadmissible." Conn. Code Evid. § 4-2; see generally

1 B. Holden & J. Daly, Connecticut Evidence (2d Ed. 1988) § 67a. Evidence is relevant if it has "any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence." Conn. Code Evid. § 4-1.

"Evidence that an accused has taken some kind of evasive action to avoid detection for a crime, such as flight . . . is ordinarily the basis for a charge on the inference of consciousness of guilt. *State* v. *Williams*, 27 Conn. App. 654, 663, 610 A.2d 672, cert. denied, 223 Conn. 914, 614 A.2d 829 (1992). The fact that the evidence might support an innocent explanation as well as an inference of a consciousness of guilt does not make an instruction on flight erroneous. . . . *State* v. *Groomes*, 232 Conn. 455, 472–73, 656 A.2d 646 (1995)." (Internal quotation marks omitted.) *State* v. *Holmes*, 64 Conn. App. 80, 88, 778 A.2d 253, cert. denied, 258 Conn. 911, 782 A.2d 1249 (2001).

It is true that the probative value of the evidence "depends on the circumstances" of each case. C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 11.5.4. Supposing that there is a particular level of prejudice associated with the evidence of evasion, the court would have discretion to exclude it if the circumstances indicate that the probative value is too slight to outweigh the prejudicial impact. See generally Conn. Code Evid. § 4-3. Nevertheless, the trial court is not required to exclude relevant evidence on this basis.

In the present case, the court was well within its discretion in admitting evidence that the defendant had procured a false identification badge. The record establishes that the defendant procured a false identification badge in North Carolina following his flight from this state after seeing his picture in the news. According to the testimony of Detective James C. Rovella, the

defendant stated that he used the identification badge "for identification." The defendant argues that he used the false identification card in another incident, unrelated to the charges at issue in this appeal. Even with this additional use of the card, the court was within its discretion in considering the evidence probative on the question of evading the criminal justice system. The court properly determined that procuring the false identification card during flight made evasive activity "more probable . . . than it would be without [that] evidence." Conn. Code Evid. § 4-1. Even if the jury reasonably could have inferred on the state of this record that the defendant had used the identification badge *exclusively* in an unrelated activity, it was entitled to make contrary inferences. The court was well within its discretion in considering the badge relevant to the question of whether the defendant had made efforts to evade capture.

Next, we turn to the gang affiliation claim. At trial, the state was permitted to introduce evidence that the defendant was a member of the "20 Love" street gang, which was "at war" with the "Latin Kings" street gang. The defendant contends, as he did at trial, that this evidence was irrelevant to any material issue, serving only as improper bad character evidence. We disagree.

The following additional facts are relevant to our disposition of this issue. The defendant told Detective Rovella that he was "hanging around" with the "wrong crowd" in 1995. He further stated that this crowd was the 20 Love street gang and that he was a member. In his written statement explaining the circumstances of the alleged crime, the defendant wrote the following: "Back then, it was like a war on the streets. The Latin Kings shot at us and we shot back." According to Rovella, the defendant "carefully chose" these words and explained to the detective that he wanted to omit a specific reference to his 20 Love gang affiliation

because he thought that it would cast him in a more adverse light.

This evidence was properly admitted as probative on the elements of mens rea at issue in this case. The law in Connecticut regarding the admission of evidence of prior misconduct is well established. "As a general proposition, evidence of guilt of other crimes, because of its prejudicial nature, is inadmissible to prove that a defendant is guilty of the crimes with which he is charged. . . . Such evidence is admissible for other purposes, however, such as when it is particularly probative in showing such things as intent, an element in the crime, identity, malice, motive or a system of criminal activity, to name some exceptions to the rule. . . . The trial judge, however, must determine in the exercise of judicial discretion that its probative value outweighs its prejudicial tendency." (Citations omitted; internal quotation marks omitted.) *State* v. *Falby*, 187 Conn. 6, 23, 444 A.2d 213 (1982). "Because of the difficulties inherent in this balancing process, the trial court's decision will be reversed only where abuse of discretion is manifest or where an injustice appears to have been done. *State* v. *Jones*, 205 Conn. 638, 660, 534 A.2d 1199 (1987). Thus, we afford every reasonable presumption in favor of the ruling of the trial court. See id." (Internal quotation marks omitted.) *State* v. *Jones*, 46 Conn. App. 640, 652, 700 A.2d 710, cert. denied, 243 Conn. 941, 704 A.2d 797 (1997). As the sole explanation of the defendant's motivation for committing the alleged crime, gang affiliation was "particularly probative in showing . . . motive." (Internal quotation marks omitted.) Id., 651. The defendant's claim to the contrary is without merit.

Finally, the defendant claims that the court improperly admitted statements that he made to the police. The defendant contends that (1) testimony concerning his inquiries about the evidence against him and (2) his

written confession should not have been admitted. The defendant claims that his statements were involuntary.

With respect to the defendant's inquiries into the strength of the evidence against him, he argues that these statements were involuntary as the result of "impermissible interrogation." The defendant preserved this claim by timely objection at trial. There is no evidence in the record whatsoever to indicate that the police took any action to elicit the defendant's inquiries into the evidence against him. Officer Peter Getz testified at trial that the defendant volunteered these inquiries, unprompted. Getz did not "speak to him pertaining the case at all," prior to these statements. The fact that the defendant was in custody does not, by itself, render his volunteered statements inadmissible. See generally *Miranda* v. *Arizona*, 384 U.S. 436, 478, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966) ("[v]olunteered statements of any kind are not barred by the Fifth Amendment").

The defendant's claim that his written confession to the Hartford police was involuntary also fails. The defendant argues that he did not understand his *Miranda* warnings or "appreciate the gravity of the situation" because he had been awake since the night before and was "still intoxicated."

The state concedes that the defendant was in custody at the time when the statements were taken. Thus, "our resolution of his claim requires us to determine whether he made a valid waiver of his rights. Pursuant to the fifth and fourteenth amendments to the United States constitution, a statement made by a defendant during custodial interrogation is admissible only upon proof that he . . . waived his rights [under *Miranda*] . . . . To be valid, a waiver must be voluntary, knowing and intelligent. . . . The state has the burden of proving by a preponderance of the evidence that the defendant

voluntarily, knowingly and intelligently waived his *Miranda* rights. . . . Whether a purported waiver satisfies those requirements is a question of fact that depends on the circumstances of the particular case. . . . Although the issue is therefore ultimately factual, our usual deference to fact-finding by the trial court is qualified, on questions of this nature, by the necessity for a scrupulous examination of the record to ascertain whether such a factual finding is supported by substantial evidence. . . .

"Whether the defendant has knowingly and intelligently waived his rights under *Miranda* depends in part on the competency of the defendant, or, in other words, on his ability to understand and act upon his constitutional rights. . . . Factors which may be considered by the trial court in determining whether an individual had the capacity to understand the warnings include the defendant's experience with the police and familiarity with the warnings . . . his level of intelligence, including his IQ . . . his age . . . his level of education . . . his vocabulary and ability to read and write in the language in which the warnings were given . . . intoxication . . . his emotional state . . . and the existence of any mental disease, disorder or retardation. . . . Furthermore, [a] defendant's express written and oral waiver is strong proof that the waiver is valid. . . . *State* v. *Lewis*, 60 Conn. App. 219, 244–45, 759 A.2d 518, cert. denied, 255 Conn. 906, 762 A.2d 911 (2000); *State* v. *Fernandez*, 52 Conn. App. 599, 610–11, 728 A.2d 1, cert. denied, 249 Conn. 913, 733 A.2d 229, cert. denied, 528 U.S. 939, 120 S. Ct. 348, 145 L. Ed. 2d 272 (1999)." (Internal quotation marks omitted.) *State* v. *Williams*, 65 Conn. App. 59, 72–73, 782 A.2d 149, cert. denied, 258 Conn. 923, 782 A.2d 1251 (2001).

Under all of the circumstances indicated in the record, the state has sustained its burden of establishing that the statement was given voluntarily. With respect

to the defendant's contention that he was too intoxicated to appreciate the gravity of the situation, the state introduced evidence that the defendant did not appear to be intoxicated. Officer John Wesoly, who had driven the defendant to the Hartford police station shortly before his confession, stated that the defendant did not have slurred speech or any odor of drugs or alcohol emanating from his person. Wesoly stated that, aside from some nervousness, the defendant did not behave abnormally or as an intoxicated person would. The defendant himself told the police that he was not under the influence of drugs or alcohol at the time. The defendant made an express written waiver of the constitutional rights implicated in his statement. He read one section aloud, thus establishing that he is literate. Rovella read each of the warnings aloud to the defendant, and the defendant stated that he understood each of them and placed his initials in the margin next to each of the five warnings. Rovella also testified that, based on his experience, there was no evidence of intoxication. The defendant was coherent and did not slur his speech. The defendant carefully crafted three out of four paragraphs in the statement that followed with no assistance from the police. We conclude, having reviewed that statement, that it does not appear to be the product of an intoxicated mind. The defendant was offered food and drink, which he refused. With respect to exhaustion, the defendant never indicated that he was tired. His coherence and voluntary instigation of the statement process belies the concept that he was exhausted.

The judgment is affirmed.

In this opinion FOTI, J., concurred.

---

SCHALLER, J., concurring. While I agree that the defendant's conviction should be affirmed, I write sepa-

rately because I do not agree with the majority's analysis of the waiver rule as it pertains to the defendant's claim that the court improperly denied his motion for a judgment of acquittal.

The defendant in this case moved for a judgment of acquittal after the state had closed its case. Following the court's denial of that motion, the defendant set forth evidence of his own. In this situation, the waiver rule provides that "if a defendant elects to introduce evidence after the trial court denies his or her motion for judgment of acquittal at the end of the state's case, appellate review encompasses the evidence in toto, including evidence introduced by the defendant." *State* v. *Calonico*, 256 Conn. 135, 139, 770 A.2d 454 (2001). In accordance with this rule, appellate review examines "the evidence in toto in order to review the trial court's ruling on the motion for judgment of acquittal after all of the evidence [has] been presented." (Internal quotation marks omitted.) Id.

While the majority recognizes the principles embodied in the waiver rule, I believe that it has not applied the rule to the defendant's second claim. The majority declines to review the defendant's second claim on the basis of its conclusion that it already has reviewed the sufficiency of all the evidence in its resolution of the defendant's first claim, in which he challenged the sufficiency of the evidence to support his conviction of manslaughter in the first degree with a firearm and assault in the first degree. The majority's resolution of the first claim, however, does not review the sufficiency of *all the evidence.*

While the majority initially casts the first claim as a general challenge to the sufficiency of the evidence, it clearly states later that the defendant's *specific claim* is that the eyewitness identifications of him were unreliable. The majority then goes on to analyze the credibility

of the eyewitnesses. The analysis is limited to this one aspect of the evidence and goes no further. On the basis of the defendant's specific claim and the majority's subsequent analysis, it is clear to me that the defendant's claim, properly stated, is that there was insufficient evidence to convict him because the eyewitness identifications were unreliable. This does not challenge the sufficiency of the evidence generally nor does it require, or indeed even allow, the majority to review all the evidence presented in the case.

The defendant cannot be deprived of appellate review of his second claim based on the resolution of the first claim because the second claim, according to the waiver rule, requires an examination of *all the evidence in toto*. Since the defendant's first claim challenged only one limited aspect of the evidence, namely, the eyewitness identifications, the majority did not review all the evidence in its resolution of the claim, but rather examined only these identifications. I conclude that the majority's review of the evidence in claim one is not adequate to meet the waiver rule's requirement that we examine *all the evidence in toto*.

In addition, I note that the waiver rule cannot be used to decline review. While I understand the majority's use of the phrase in this particular case, where it perceives the first and second claims to be essentially the same, I believe it is incorrect to state that we decline review under the waiver rule. The waiver rule requires a complete evidentiary review; it provides no authority to decline review. In the present case, therefore, if the majority had in fact reviewed all the evidence in claim one, it should have concluded that review of the second claim was unwarranted because the issue already had been fully addressed in claim one and that further review in this particular case would be merely duplicative.

My differences with the majority's application of the waiver rule notwithstanding, however, I also conclude that the defendant's conviction should be affirmed. After a review of the defendant's second claim under the waiver rule, in which I examined all the evidence presented at trial, it is my opinion that the court properly denied the motion for a judgment of acquittal and that there was sufficient evidence for the jury to find the defendant guilty of the crimes charged. I therefore agree with the majority's conclusion.