STATE OF CONNECTICUT *v.* GILBERTO GONZALEZ
(AC 22374)

Lavery, C. J., and Schaller and West, Js.

---

Argued October 23, 2002—officially released March 4, 2003

*Moira L. Buckley,* deputy assistant public defender, for the appellant (defendant).

*James A. Killen,* senior assistant state's attorney, with whom, on the brief, were *Patricia M. Froehlich,* state's attorney, and *Debra A. Collins,* assistant state's attorney, for the appellee (state).

*Opinion*

WEST, J. The defendant, Gilberto Gonzalez, appeals from the judgment of conviction, rendered following a jury trial, of two counts of sexual assault in the first degree in violation of General Statutes § 53a-70 and two counts of risk of injury to a child in violation of General Statutes § 53-21. On appeal, the defendant claims that the trial court improperly (1) allowed testimony that exceeded the bounds of permissible constancy of accusation testimony, (2) violated his due process rights by questioning a defense witness, (3) allowed an expert witness to testify as to his opinion on an ultimate issue in the case, (4) allowed a fact witness to testify as to his opinion on an ultimate issue in the case and (5) violated the defendant's sixth amendment right of confrontation by denying him access to certain privileged documents. We agree in part and reverse the judgment of the trial court.[1]

The jury reasonably could have found the following relevant facts. The victim[2] was born in 1985. In 1993 and 1994, the victim lived with her mother, the victim's two half-sisters and the defendant. The defendant and the victim's mother had lived together from the time that the victim was two years old.

---

[1] Because the defendant's claim regarding the improper admission of constancy of accusation testimony is dispositive of this appeal, we need not reach the other issues. We choose, however, to address the defendant's claim regarding the failure of the court to afford in camera review of certain privileged documents because that issue is likely to arise again during retrial.

[2] In accord with court policy to protect the privacy rights of victims in matters concerning sexual abuse, we decline to identify the victim or others through whom her identity may be revealed. See General Statutes § 54-86e.

The victim testified that the defendant sexually assaulted her at least four times a week during 1993 and 1994. Those assaults occurred in the family home while the victim's mother was either absent from the apartment or while she was in another part of the apartment sleeping. The victim testified that she did not cry out or otherwise attempt to tell her mother about the assaults because the defendant had threatened her. One of the victim's half-sisters witnessed the assaults on the victim on several occasions. The defendant unsuccessfully attempted to coerce the half-sister into participating in those acts.

The half-sister eventually disclosed the defendant's abuse of the victim to a friend at school. That friend, in turn, told the school social worker about the sexual assaults. On March 24, 1994, the social worker spoke with the victim about the assaults. The victim testified that although her half-sister had encouraged her to confide in the school social worker, she initially had lied to the social worker and denied that the defendant had assaulted her. At trial, the victim stated that she had denied that those assaults had occurred because she was afraid of the defendant. The victim eventually did tell the school social worker that the defendant had assaulted her. The victim also was interviewed by an intake worker for the department of children and families (department) and a sexual assault crisis counselor. During those interviews, the victim confirmed the allegations of abuse.

Following those interviews, the victim and her half-sister confronted the defendant and the victim's mother with the allegations of abuse during a meeting at the department's offices. After that meeting, the department took the children into its custody. Three days later, the defendant fled to Puerto Rico. On March 2, 2000, a fugitive task force arrested the defendant in

Puerto Rico. He was extradited to Connecticut on March 22, 2000.

On April 5, 1994, a physician examined the victim on the department's referral. Although his examination did not establish conclusively that the victim had been sexually assaulted, the physical evidence was sufficient for the physician, to form "a very high degree of suspicion" that the victim had been exposed to some form of sexual contact. Additional facts will be set forth as necessary.

I

The defendant's first claim is that the court improperly allowed testimony by the department worker and the crisis counselor that exceeded the bounds of permissible constancy of accusation testimony. In opposition to that claim, the state argues that (1) the claim should not be reviewed because the defendant failed to move to strike the challenged testimony, (2) the court should not consider the defendant's claim because he failed to object to the state's offer of the crisis counselor's testimony under the medical treatment exception to the hearsay rule, (3) the challenged testimony was admissible because the defendant opened the door by questioning the victim and her sister regarding the details of the sexual abuse, and (4) the defendant has not demonstrated harm. We disagree with the state and agree with the defendant that the challenged testimony was both improper and harmful.

At the outset, we set forth the applicable standard of review for the defendant's claim. "It is well settled that [t]he trial court's ruling on the admissibility of evidence is entitled to great deference. . . . [T]he trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . [Its] ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the

trial court's ruling . . . . Moreover, evidentiary rulings will be overturned on appeal only where there was . . . a showing by the defendant of substantial prejudice or injustice." (Internal quotation marks omitted.) *State* v. *Watts*, 71 Conn. App. 27, 34, 800 A.2d 619 (2002).

The following additional facts are necessary for our resolution of the defendant's claim. On June 18, 2001, the defendant filed a motion in limine seeking an order from the court prohibiting the state from introducing any constancy of accusation testimony. In the alternative, the defendant's motion requested that any such testimony that the court admitted should be limited according to the strictures of *State* v. *Troupe*, 237 Conn. 284, 304, 677 A.2d 917 (1996) (en banc). The court, on June 27, 2001, denied the defendant's motion to bar constancy of accusation testimony with the caveat that, pursuant to *State* v. *Kelly*, 256 Conn. 23, 38 n.11, 770 A.2d 908 (2001), such testimony would be limited to the fact that the victim made a complaint, the date and nature of that complaint, and the identity of the perpetrator.

At trial, the state called the department intake worker to testify. The prosecution asked her what the victim had disclosed to her during their first meeting. In responding to that question, the department worker disclosed explicit details of the sexual contact between the defendant and the victim.[3] The defendant, relying

---

[3] The relevant portion of the department worker's testimony was as follows:

"[Prosecutor]: Now, going back to when you first met the victim in this case, what did she disclose to you?

"[The Witness]: She disclosed that [the defendant] had touched her private parts and that he had inserted his penis, which she called 'butt' at that time, into her private parts, which she meant her vagina, and that this happened on several occasions, and one time she described as some white stuff coming out of his butt, called 'penis.'

"[Defense Counsel]: Your Honor, I'm going to have to object based on the motion in limine that was filed and heard before the court this morning."

on the motion in limine, objected to the witness' response. The jury was excused, and the court heard argument on the objection by counsel.[4]

The state, while conceding that it had expected an objection during the testimony, argued that the department worker's testimony was permissible because it was offered to establish only that the nature of the incident was a sexual assault. The court overruled the defendant's objection, but cautioned counsel that it would be guided by whatever the parties sought to introduce from that point forward. When the jury returned, the details of the assault were not revisited, and the department worker's testimony proceeded without further objection.

The state subsequently called the crisis counselor to testify. The state asked her to testify regarding what the victim had stated during their interview. The defendant objected to the question on the basis of the court's previous ruling. The court summarily overruled the objection. Following the court's ruling on the objection,

---

[4] The following colloquy took place:

"[Defense Counsel]: I'd object to the witness getting into this area. Specifically, the victim and her sister have testified, they testified graphically to the events at issue. The purpose of these interviews would be obviously to confirm and quantify the allegations, and that, by definition, would make them constancy of accusation witnesses and would make her a constancy of accusation witness. And pursuant to Your Honor's ruling this morning and the case law in Connecticut, that should be necessarily limited to the identification of the perpetrator and the fact that abuse actually was confirmed, not the details of the actual assault.

"[Prosecutor]: Your Honor, I would first note that my only question was, 'What did she tell you?' Next, I don't plan on having her go any—into any more detail. I believe what she said up to the point of the 'white stuff' could go to whether the complaint [was] about the sexual assault. I don't plan on having her go any further than she did. I expected an objection much sooner.

"The Court: Okay.

"[Prosecutor]: I'm not going to object to my own witness.

"The Court: Okay. Well, I certainly would permit some testimony from the [department] worker, but I'll be guided by whatever you two seek to permit at this point. Please summon the jury."

the prosecutor stated on the record that the testimony was being offered as a "part of the history taking of a diagnosis by a social worker." The court did not comment on the state's offer, and the direct examination of the crisis counselor continued. As the defendant anticipated, her response presented the details of the alleged sexual assaults in vivid detail.[5]

To resolve the issue raised in this appeal, it is necessary to review our jurisprudence regarding constancy of accusation testimony. The seminal case regarding the admission of constancy of accusation testimony in

[5] The relevant portion of the crisis counselor's testimony was as follows:

"[Prosecutor]: And could you tell us about what she had stated?

"[The Witness]: Yes. She disclosed that—

"[Defense Counsel]: I would object based on the previous court ruling.

"The Court: All right. Your objection is overruled.

"[Prosecutor]: Your Honor, I would just note for the record, *State* v. *DePastino*, 228 Conn. 552 [638 A.2d 578 (1994)]. This is not hearsay. It is part of the history taking of a diagnosis by a social worker. . . .

"[Prosecutor]: If you could answer the question. What did she tell you?

"[The Witness]: She disclosed that on several occasions her stepfather, whom she refereed to as dad, had—

"[Prosecutor]: Also referred to as [the defendant]?

"[The Witness]: Also—yes. And had touched her in her private, she also called it a butt. We made sure that she was making reference—what those words meant. In other words, diagrams are sometimes used, children point to themselves. She clearly stated that words that she used for her vaginal area was 'butt' or 'private.' She referred to her rectal area as 'bottom.' She referred to a male penis as a 'butt.' And she said that he put his private in her private on several occasions, that he would also rub his private and touch her private and slimy white stuff would come out into his hand. He would throw it into the toilet.

"She said on one occasion in particular the slimy white stuff went into her private. She got up, went into the bathroom to clean herself with toilet paper. She said, interestingly enough, that her mother almost caught them, but that when her mother came to the bathroom, she was a little nervous. So, she said, 'I just told my mother I was going to the bathroom.' . . . [S]he said that it would happen in the bathroom, his bedroom and her bedroom.

"She said that he told her not to tell because her mother would hit her if she did tell. She said that her sister had—her older sister had witnessed this happening. And she said that it would make her throw up. Oh, and I'm sorry. She also said that he put his private in her bottom and that it hurt her, and her mother gave her medicine to help her to go to the bathroom."

Connecticut is *State* v. *Troupe*, supra, 237 Conn. 284. Following a thorough review of the historical development of the constancy of accusation doctrine and a survey of the manner in which such testimony is treated in other jurisdictions, the *Troupe* court concluded that although there remains a need for constancy of accusation evidence to counter commonplace social prejudices in sexual assault cases, the scope of the evidence permitted as constancy of accusation evidence should be narrowed.[6] Id., 294–303. The court was particularly concerned with the potential for undue prejudice against the defendant arising from repeated iteration of the details of a sexual assault. Accordingly, the court narrowed the constancy of accusation exception to the hearsay rule, declaring that "a person to whom a sexual assault victim has reported the assault may testify only with respect to the fact and timing of the victim's complaint; any testimony by the witness regarding the details surrounding the assault must be strictly limited to those necessary to associate the victim's complaint with the pending charge, including, for example, the time and place of the attack or the identity of the alleged perpetrator." Id., 304.

In the present case, we conclude that the court abused its discretion in admitting the challenged constancy of accusation testimony. The nature of the constancy of accusation testimony in the present case exemplifies the particular dangers that the Supreme Court noted in *Troupe*. Specifically, the nature of that testimony was ideally designed to arouse the prejudices and sympathies of the jury. The facts of this case present

---

[6] The *Troupe* court stated that despite having been discredited in contemporary times, "many people still adhere to the [unfounded] belief that a rape victim ordinarily will report the crime and that the failure of the victim to do so casts doubt on the credibility of the accusation." *State* v. *Troupe*, supra, 237 Conn. 301.

a situation where a young child allegedly has been subjected to degrading abuse of the most heinous sort at the hands of an individual who is invited into the home by the victim's mother and who, ideally, should be filling the role of the victim's protector and guardian. When faced with the appalling details of the alleged assaults, the jury could not help but be roused by antipathy and disgust.

Notwithstanding the *Troupe* court's decision not to apply the prohibition against broad constancy of accusation testimony retroactively, the court clearly indicated that such testimony was to be excluded in subsequent proceedings. Id., 304–305. Given our Supreme Court's admonition regarding constancy of accusation testimony, the court was obligated, absent an independent ground for its admissibility, to exclude such evidence after a proper objection by the defendant. For the foregoing reasons, we conclude that the court abused its discretion by failing to exclude the challenged constancy of accusation testimony.

A

Notwithstanding the clearly improper admission of the challenged testimony pursuant to the constancy of accusation doctrine, the state argues, with respect to the *department worker's testimony*, that the defendant has not preserved the issue properly for appeal because he failed to make a request during the trial that the court strike the challenged testimony. We are unpersuaded.

"The standard for the preservation of a claim alleging an improper evidentiary ruling at trial is well settled. This court is not bound to consider claims of law not made at the trial. . . . In order to preserve an evidentiary ruling for review, trial counsel must object properly. . . . In objecting to evidence, counsel must properly articulate the basis of the objection so as to apprise the trial court of the precise nature of the objec-

tion and its real purpose, in order to form an adequate basis for a reviewable ruling. . . . Once counsel states the authority and ground of his objection, any appeal will be limited to the ground asserted." (Internal quotation marks omitted.) *Pestey* v. *Cushman*, 259 Conn. 345, 365, 788 A.2d 496 (2002). The defendant in this case has preserved the issue properly for appeal.

It is usually the case that when a question posed to a witness at trial is not itself improper but the answer to that question contains inadmissible material, "an objection made upon the answer is seasonable . . . ." 1 J. Wigmore, Evidence (Tillers Rev. 1983) § 18, p. 800; *Hackenson* v. *Waterbury*, 124 Conn. 679, 683, 2 A.2d 215 (1938). The proper form of such an objection is a motion to strike the answer. 1 J. Wigmore, supra, § 18, p. 800. In the present case, the defendant objected to the response, but did not request specifically that the court strike that response. That failure, however, is not fatal to the defendant's claim on appeal because it appears, from the record before us, that the court overruled the defendant's objection. In response to the defendant's objection, the court stated to counsel: "Well, I certainly would permit some testimony from the [department] worker, but I'll be guided by whatever you two seek to permit at this point." Thus, a specific request to strike the answer was preempted.[7] Thereafter, the jury was recalled, and the department worker's testimony resumed. The constancy of accusation testimony was not revisited, and the testimony proceeded without objection from that point.

---

[7] We also note that it was clear from the context in which the objection was raised and the ensuing discussion regarding that objection that the defendant was seeking to exclude that portion of the witness' testimony providing improper details of the victim's hearsay statement. Thus, it was implicit in the objection itself that the defendant was requesting that the objectionable material be struck. To conclude otherwise would be to elevate form over substance. See *Hackenson* v. *Waterbury*, supra, 124 Conn. 684 (where party raised successful objection to testimony, jury may not, in absence of motion to strike, consider that testimony as evidence).

We agree with the defendant that it would have been futile for him to request the court to strike the testimony to which he had raised the objection after the court had denied that very objection. Accordingly, we conclude that the defendant has preserved his claim for appeal.[8]

B

With respect to the crisis counselor's testimony, the state argues that it was not constancy of accusation testimony at all, but rather, that it was offered as "part of the history taking of a diagnosis by a social worker." In addressing that argument, we note that a court can sustain the admission of evidence on any proper grounds that exist for its admission. See *State* v. *Williams*, 48 Conn. App. 361, 367, 709 A.2d 43, cert. denied, 245 Conn. 907, 718 A.2d 16 (1998). We conclude, however, that the crisis counselor's testimony was not admissible under the medical treatment exception to the hearsay rule.

Whether evidence offered at trial is admissible pursuant to one of the exceptions to the hearsay rule presents a question of law. Accordingly, our review of the state's claim is plenary. See *State* v. *Tillman*, 220 Conn. 487, 491, 600 A.2d 738 (1991), cert. denied, 505 U.S. 1207, 112 S. Ct. 3000, 120 L. Ed. 2d 876 (1992).

To address the state's argument, the following additional facts are necessary. When the state asked the crisis counselor to tell the court what the victim had stated to her regarding the details of the alleged sexual abuse, the defendant objected. In raising his objection, the defendant referred to the court's previous ruling on the objection to the department worker's responses.

---

[8] It should be noted, however, that pursuant to the court's discretion in evidentiary matters, it is, strictly speaking, the court's admission of the evidence, and not the court's violation of its ruling on the motion in limine, that is the appealable error.

The court overruled the objection with no discussion. Following the court's ruling, the prosecutor stated: "Your Honor, I would just note for the record, *State* v. *DePastino*, 228 Conn. 552 [638 A.2d 578 (1994)]. That is not hearsay. It is part of the history taking of a diagnosis by a social worker."[9]

In *DePastino*, our Supreme Court held that "[i]n cases of sexual abuse in the home, hearsay statements made in the course of medical treatment which reveal the identity of the abuser, are reasonably pertinent to treatment and are admissible." (Internal quotation marks omitted.) Id., 565. Although the facts of *DePastino* were limited to statements made to a physician in the course of obtaining medical treatment, the rule was expanded subsequently in *State* v. *Cruz*, 260 Conn. 1, 792 A.2d 823 (2002). In *Cruz*, our Supreme Court held that statements provided to a social worker operating within the "chain of medical care" were properly admissible under the medical treatment exception to the hearsay rule, notwithstanding the fact that such individual was not herself a physician. Id., 6.

Pursuant to *Cruz*, the sole consideration to be evaluated in determining the admissibility of evidence under the medical treatment exception is whether the statements are "made for the purpose of obtaining medical diagnosis or treatment and are pertinent to the diagnosis or treatment sought." Id. Thus, in order to assess the state's argument on appeal, it is necessary to determine whether the crisis counselor's interview of the defen-

---

[9] Although not relevant to the central analysis of the issue, we note for the record that contrary to the state's offer of proof, the crisis counselor is not a social worker and does not hold a degree in social work. She described herself as a "child crisis counselor," and listed her professional degrees as a bachelor of science in elementary education, a master of science in counseling with a certification in school counseling, kindergarten through grade twelve, and a Connecticut state certification in sexual abuse counseling.

dant occurred within the "chain of medical care." Id. We conclude that it did not.

It is evident from the crisis counselor's testimony that her interview of the victim was not for the purpose of medical diagnosis or treatment. The victim was referred to the crisis counselor through the department, and the interview took place at the department's office, not at a hospital. The crisis counselor did not testify that her interview with the victim would provide the foundation for either physical or psychological medical care.[10] Indeed, the department independently referred the victim to another individual, a physician, for the purpose of medical diagnosis.

The crisis counselor repeatedly referred to her interview with the victim as investigative, rather than diagnostic. During the crisis counselor's testimony, she indicated that her background included training police officers on how to interview children. She testified that a police officer was present during her interview with the victim. She testified that she was opposed to the victim's desire to confront the defendant concerning the abuse because, in addition to being traumatic for the child, such confrontations can interfere with the police investigation. We conclude, therefore, that the crisis counselor was not operating within the "chain of medical care"; id.; and that her testimony was not admissible under the medical treatment exception to the hearsay rule.

## C

Finally, the state argues that the defendant opened the door to the challenged constancy testimony by elic-

[10] The record is silent as to the victim's subjective expectation or belief regarding the purpose of the interview. Cf. *State* v. *Maldonado*, 13 Conn. App. 368, 372, 536 A.2d 600, cert. denied, 207 Conn. 808, 541 A.2d 1239 (1988). For the reasons discussed in the text of this opinion, we conclude that the circumstances of the present case do not support an inference that the victim necessarily believed that the purpose of that interview was to provide medical diagnosis or treatment.

iting details of the alleged abuse from the victim and her half-sister during cross-examination. We disagree.

"As a general rule . . . if a party delves into a particular subject during examination, he is said to have 'opened the door' for further examination regarding that subject." *State* v. *Morascini*, 62 Conn. App. 758, 766, 772 A.2d 703, cert. denied, 256 Conn. 921, 774 A.2d 141 (2001). Our Supreme Court has recognized that "[a] defendant, on cross-examination of a constancy witness, may elicit details of the victim's complaint for the purpose of demonstrating inconsistencies between the victim's trial testimony about the sexual assault and the victim's report of the incident. In such cases, the effect of our modification of the constancy of accusation doctrine is merely to shift the timing of the introduction into evidence of the details." *State* v. *Troupe*, supra, 237 Conn. 304 n.19. "The doctrine of opening the door cannot, [however], be subverted into a rule for injection of prejudice." (Internal quotation marks omitted.) *State* v. *Morascini*, supra, 766.

The state called the half-sister as a witness during its case-in-chief. During cross-examination, the defendant questioned her regarding the details of what she allegedly had seen occur between the victim and the defendant. The defendant then inquired about several inconsistencies in the statements that the half-sister had given to the police and to the department. Specifically, the defendant pointed out that in each of those statements, the witness had stated that the abuse occurred in a different room of the apartment. In the statement provided to the police, the witness stated that the abuse occurred in the kitchen, but in the statement given to the department, the witness stated that the abuse had occurred in the bedroom.

In advancing its argument that the cross-examination of the victim and her half-sister had opened the door

to the introduction of the challenged constancy evidence, the state relies on *State* v. *Abrahante*, 56 Conn. App. 65, 70–72, 741 A.2d 976 (1999). In *Abrahante*, we held that the trial court had not abused its discretion when it allowed three witnesses to testify regarding prior consistent statements made by the victim when those statements put into context for the jury inconsistencies in the victim's statements that were brought out during cross-examination. Id., 72. Thus, the constancy of accusation testimony was admitted for the purpose of rehabilitating the victim's testimony.[11] Id. Despite the state's arguments to the contrary, Abrahante does not stand for the proposition that a defendant opens the door to unlimited constancy of accusation testimony simply by bringing facts before the jury through the testimony of another witness.

The state called the victim as a witness in its case-in-chief. During her testimony, the victim stated that the defendant had assaulted her at various times in her bedroom, in the living room, in the bathroom, in the kitchen and in her sister's room. On cross-examination, the defendant asked the victim if she had told either the police or the department about the abuse that occurred in the living room. She conceded that she had not.

At no point during that cross-examination did the defendant challenge the details of the assault about which either the department worker or the crisis counselor later testified. Their testimony also did not con-

---

[11] The state's argument confuses testimony elicited from a victim during cross-examination with that elicited from an eyewitness. The half-sister's testimony was restricted to those events that she herself had witnessed. The statements elicited from the constancy witnesses, the department worker and the crisis counselor, related not to the half-sister's statements, but rather to the statements made by the victim. Thus, the constancy testimony was not being used to rehabilitate the testimony of either the half-sister or the victim.

cern the particular rooms of the house in which the abuse was alleged to have occurred. Thus, the challenged constancy evidence did not address the details on which the defense sought to impeach the victim's credibility. Accordingly, we conclude that the defendant's cross-examination of the victim did not open the door to the introduction of the challenged constancy of accusation testimony.

Furthermore, the state's argument that the defendant opened the door to the challenged constancy of accusation testimony by illuminating inconsistencies in statements made by an eyewitness, rather than the victim, is misplaced. The inconsistencies brought out during the cross-examination of the half-sister did not involve statements the victim had made to the half-sister. Rather, the cross-examination concerned events that the half-sister had witnessed. The constancy testimony, by contrast, involved statements made by the victim to, respectively, the department worker and the crisis counselor. Moreover, as with the cross-examination testimony of the victim, the substance of the inconsistencies brought out during the cross-examination bore no relation to the challenged constancy testimony. Thus, we conclude that the subsequent constancy testimony had no relevance to the half-sister's cross-examination testimony, and the holding of *Abrahante* is inapplicable to the facts before us.

## II

We next turn to the defendant's claim that the court improperly denied him access to privileged documents. At trial, the defendant sought in camera review of the victim's department records on the basis of his right to confrontation under the sixth amendment to the United States constitution as well as his due process right to exculpatory evidence under the fourteenth amendment

to the United States constitution.[12] The defendant also claims that the court, following an in camera review, improperly failed to disclose material contained in the victim's and the half-sister's board of education and counseling center records that would affect the credibility of the witnesses. We review those claims in turn.

## A

We review the court's conclusion that the defendant was not entitled to an in camera review of the confidential documents pursuant to our standard of review for the court's evidentiary rulings. See *State* v. *William C.*, 71 Conn. App. 47, 62, 801 A.2d 823 (access to confidential records should be left to discretion of trial court), cert. granted on other grounds, 262 Conn. 907, 810 A.2d 277 (2002); *State* v. *Manini*, 38 Conn. App. 100, 114, 659 A.2d 196, cert. denied, 234 Conn. 920, 661 A.2d 99 (1995). "The trial court has wide discretion in its rulings on evidence and its rulings will be reversed only if the court has abused its discretion or an injustice appears to have been done." (Internal quotation marks omitted.) *State* v. *Manini*, supra, 114. In the present case, we conclude that the court did not abuse its discretion when it concluded that the defendant was not entitled to an in camera review of the department records.

In *State* v. *Kulmac*, 230 Conn. 43, 58, 644 A.2d 887 (1994), our Supreme court held that to compel an in camera review of qualified confidential records pursuant to the sixth amendment right to confront witnesses, a defendant must make a preliminary showing that the failure to produce the information is likely to impair his right of confrontation. To meet that burden, a defendant must do more than simply assert that the requested files *may* contain information that would be useful for

---

[12] On appeal, however, the defendant has limited his argument to the sixth amendment confrontation claim. We restrict our review accordingly.

the purpose of impeaching the victim's credibility. Id., 56–57.

In this case, the court found that 240 pages of department records had been disclosed previously to the defendant. Despite specifying a few general issues of particular interest, however, the defendant did not offer any evidence or argument that the material sought was likely to be contained within the remaining records. Indeed, the defendant conceded that he had no idea what was contained therein.[13] Although defense counsel

[13] The defendant's argument in support of in camera review of the department records consisted of the following presentation: "Certainly, I don't know, first off, I don't know what is in those volumes. Okay. My client tells me that a [department] case was opened on these children prior to these allegations. The mother of the children has been charged. She will not talk to me without counsel, and the children are obviously off limits at this point in time. The only information I have for the court is as what my client states it is, but, be that as it may, the following features should be noted by the court. It is a situation where [the defendant] is charged with a serious sexual assault. The only evidence the state has is, of course, the children. Their statements. There's no physical evidence certainly linking any abuse to my client. With that background, obviously the credibility of the children is paramount to the issues of the case, and anything in their volumes which would indicate—which will allow me to confront these witnesses effectively should be reviewed and, if it's there, should be then disclosed.

"His sixth amendment—he has a sixth amendment right to confront the witnesses against him. That has been embodied in article first, § 8, of our [state] constitution. He has a right to confront his witnesses. That is commonly defined as the right to cross-examine, and cross-examination includes any issues of credibility, bias or motive for testimony.

"So, I would submit to Your Honor, the facts of the case alone compel the court to at least, at the very minimum, do the in camera inspection. There is an abundance of case law that would support the proposition that this is the procedure that should be engaged, and there is now a Practice Book rule specifically on it. I could not call anybody to the [witness] stand right now other than [the department] or one of its agents to give the information to Your Honor. I just don't know what's in the file, and I think Your Honor should review it and, if it's there, disclose it to me.

"As to the specifics, I would ask Your Honor, again, do an in camera inspection. I would ask [that] Your Honor review the documents for any [department] incidents reported prior to the dates of the allegations. I would ask Your Honor for a disclosure of any psychiatric or psychological disorders noted in allegations either before or after these incidents. I would ask Your Honor for any information surrounding medications that these children

represented that the defendant had indicated that a department case had been opened on the children prior to the present allegations of abuse, the prosecution stated that it had been informed by the department that it had not been involved with the children on any prior occasion. It appears that the defendant's attempt to obtain an in camera review was the sort of fishing expedition that our Supreme Court has proscribed repeatedly. See *State* v. *Montgomery*, 254 Conn. 694, 726–27, 759 A.2d 995 (2000); *State* v. *Pratt*, 235 Conn. 595, 610, 669 A.2d 562 (1995); *State* v. *Harris*, 227 Conn. 751, 766, 631 A.2d 309 (1993). Thus, we conclude that the defendant failed to make the requisite showing entitling him to an in camera inspection of the department records by the court.

The record also indicates that, despite his failure to obtain an in camera review of the department records, the defendant was able to cross-examine adequately both the victim and her sister and to impeach their credibility. "Where the trial court allows significant cross-examination concerning a witness' veracity, it cannot be said that the constitutional right to confrontation is implicated." *State* v. *Pinnock*, 220 Conn. 765, 779, 601 A.2d 521 (1992). Although a lack of knowledge about the credibility of a witness implicates the constitutional right of confrontation, "[t]hat lack of knowledge can be ameliorated by an extensive and effective cross examination." *State* v. *Leduc*, 40 Conn. App. 233, 249, 670 A.2d 1309 (1996), on appeal after remand, 44 Conn. App. 744, 690 A.2d 1390, cert. denied, 241 Conn. 909, 695 A.2d 541 (1997).

During the cross-examination of the half-sister, the defendant presented the jury with evidence that she

might have received, and I would ask Your Honor for disclosure of any acts of character which would be fair for me to cross-examine about. Specifically, stealing, disciplinary problems either in school, home or in the community. Any sexual misconduct, and certainly his due process rights would compel Your Honor to disclose anything exculpatory."

had been in trouble previously for stealing at school and had lied to cover up the fact of those thefts. Even more damaging to the witness' credibility was the introduction of her testimony during cross-examination that in 1998, she had accused an upstairs neighbor of raping her. The half-sister testified that she later recanted and claimed that she had lied about the episode to get even with that neighbor for meddling in her affairs. On redirect, she testified that she was in love with that neighbor and that the alleged rape had in fact occurred, but that it was statutory rape and that in later recanting the allegation, she simply was trying to help that neighbor.

During cross-examination of the victim, the defense elicited testimony that her mother and the defendant had fought frequently, often physically assaulting each other. Thus, the defense brought forth evidence regarding a possible motive for the victim to fabricate the allegations, namely, a desire to be removed from that home environment. The defense also elicited testimony that the victim had made allegations of physical abuse against the foster caregivers with whom she had been placed following her removal from her home. Those caregivers testified that they had been involved with foster care for twelve years and had never previously been accused of abuse. That testimony was unimpeached.

On the basis of the wide latitude given to defense counsel during the cross-examination of the witnesses and the success of that cross-examination to elicit testimony highly probative of the victim's credibility, we conclude that the court's denial of an in camera review of the department records did not impair the defendant's sixth amendment confrontation right.

B

The defendant also claims that the court improperly failed to disclose material contained in the board of

education and counseling center records. The defendant had subpoenaed those records and requested that the court review them in camera. The court did review those documents and disclosed to the defendant one paragraph of material from the counseling center material that it deemed relevant. At the time of that disclosure, the defendant did not raise any objection. On appeal, the defendant asserts that he preserved his claim by the mere act of subpoenaing the records and requesting their disclosure. In the alternative, the defendant argues that his claim with regard to the disclosure of those records is reviewable under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989), because the denial of access to those records implicates his sixth amendment right of confrontation.

"[A] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." (Emphasis in original.) Id., 239–40.

"The right to cross-examine witnesses does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony. Normally the right to confront one's accusers is satisfied if defense counsel receives wide latitude at trial to question witnesses."

(Internal quotation marks omitted.) *State* v. *Harris*, supra, 227 Conn. 764. Our review of the record satisfies us that the constitutional standard was met. Accordingly, his claim must fail because, pursuant to *Golding*, the defendant has failed to establish that the alleged constitutional violation clearly exists and clearly deprived him of a fair trial.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.